UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALEXANDER GUREVITCH and IRINA
GUREVITCH,

                            Plaintiffs,

     - against -

EMERALD GREEN PROPERTY OWNERS
ASSOCIATION, INC., MARVIN NEWBERG, and
"JOHN and JANE DOES" 1 through 10,

                          Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-8156 (CS)

<u>Appearances</u>:

Joseph A. Churgin
Savad Churgin
Nanuet, New York
*Counsel for Plaintiffs*

Aaron N. Solomon
Amanda Varrone
Kaufman Dolowich LLP
Woodbury, New York
*Counsel for Defendant Emerald Green Property Owners Association, Inc.*

James D. Spithogiannis
L'Abbate, Balkan, Colavita & Contini, LLP
Melville, New York
*Counsel for Defendant Marvin Newberg*

<u>Seibel, J.</u>

       Before the Court are the motions to dismiss of Defendants Marvin Newberg ("Newberg")

and the Emerald Green Property Owners Association, Inc. ("EGPOA").  (ECF Nos. 36, 42.)  For

the following reasons, the motions are GRANTED.

I.    **BACKGROUND**

The following facts are taken from Plaintiffs' Amended Complaint, (ECF No. 23

("AC")), and state court records.[1]  I accept as true the facts, but not the conclusions, set forth in

the AC.

A.    **Facts**

Plaintiffs Alexander Gurevitch ("Alexander") and Irina Gurevitch ("Irina") are a married

couple who practice Hasidic Judaism.  (AC ¶ 8.)  Defendant EGPOA is a homeowners

association ("HOA") incorporated in New York.  (*Id.* ¶ 9.)  Defendant Newberg is an attorney

who regularly represents the EGPOA.  (*Id.* ¶¶ 10-12.)

In September 2021, Plaintiffs purchased a house located in the EGPOA at 90 North

Emerald Drive, Thompson, Sullivan County, New York 12775 (the "Property").  (*Id.* ¶¶ 13, 24,

33.)  The purchase price was $359,000, and they took out a mortgage for $287,200.  (*Id.* ¶ 48.)

Plaintiffs chose the Property because it met the criteria necessary to observe Hasidic Judaism

(such as being within walking distance of a synagogue) and they "believe[ed] that others in [the]

area were supportive of the exercise of religious freedoms."  (*Id.* ¶¶ 31-32.)  They allege,

however, that at an unstated time, unidentified "individuals associated with" the EGPOA

criticized developer Richard Steinberg, from whom Plaintiffs had bought the Property, for trying

---

[1] In considering a motion to dismiss, a district court "may consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011).  The Court may take judicial notice of documents from related state court actions, *see Dabah v. Franklin*, No. 19-CV-10579, 2022 WL 973834, at *2 (S.D.N.Y. Mar. 31, 2022), *aff'd*, No. 22-845-CV, 2023 WL 3577872 (2d Cir. May 22, 2023) (summary order), "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  (Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.)

to attract "Jews from New York City" as buyers within the EGPOA-controlled area. (*Id. ¶* 22; *see id.* ¶¶ 23-24.) They further allege that such persons undertook unspecified discriminatory efforts to prevent Hasidic Jews from buying or remaining in such properties. (*Id.* ¶ 20.)[2]

The day after Plaintiffs moved into the Property, an unnamed individual from the EGPOA arrived at the Property to give Plaintiffs a collection invoice for the previous five years of dues. (*Id.* ¶ 34.) The individual also informed Plaintiffs that the Property was part of the EGPOA and, as such, Plaintiffs were required to adhere to the EGPOA's rules and regulations regarding use and improvements of the Property and the payment of fees and charges. (*Id.* ¶ 35.) Plaintiffs allege that Steinberg had told them that the Property was not subject to the control or requirements of the EGPOA, a representation on which they relied when making the purchase. (*Id.* ¶¶ 22, 23, 36, 49-50.) Plaintiffs did not sign any agreement with the EGPOA allowing them to exercise control over the property. (*Id.* ¶ 40.) But Plaintiffs do not dispute, and in fact concede, (*id. ¶* 24), that the Property is in fact within the EGPOA.

Plaintiffs allege that representatives of the EGPOA "constantly patroll[ed]" the Property to ensure compliance with the EGPOA's rules. (*Id.* ¶ 41.) The EGPOA imposed daily fines on Plaintiffs for erecting an *eruv*[3] on the Property, even though the Town of Thompson (the "Town") had approved Plaintiffs' use of sticks around the boundary of the Property. (*Id.* ¶¶ 37-39.) The EGPOA also issued Alexander a "Stop Work Order" in response to Plaintiffs

---

[2] Plaintiffs further allege on information and belief that at an unstated time, an unidentified Hasidic family left the area because of unspecified discrimination, (AC ¶ 25), and that the EGPOA recently bought a parcel of land planned for a golf course but has yet to develop it, (*id. ¶* 26).

[3] Observant Jews are forbidden to carry anything on the Sabbath unless they are in a private space. Lome Rozovsky, *What Is an Eruv?*, Chabad.org, https://www.chabad.org/library/article_cdo/aid/700456/jewish/What-Is-an-Eruv.htm (last visited Feb. 25, 2025). An *eruv* is a "technical enclosure which surrounds both private and hitherto public domains and thus creates a large private domain in which carrying is permitted on Shabbat." *Id.*

constructing a *mikvah*,[4] deck and shed on the Property.  (*Id.* ¶¶ 54-58.)  Plaintiffs allege that they received "all required approval" from the Town prior to installing the *mikvah*.  (*Id.* ¶ 56.)  Finally, Plaintiffs allege that, to prevent Jewish residents of the EGPOA from redressing grievances, the EGPOA conducted meetings on Friday evening or during the daytime on Saturday when they could not attend due to religious observance.  (*Id.* ¶ 42.)

On January 10, 2022, Newberg filed with the Clerk of Sullivan County a "Notice of Lien for Common Charges" against Alexander for "[c]ommon charges, dues, assessments and accrued interest thereon" in the amount of $4,476.36, pursuant to Section 339-z of the Real Property Law of the State of New York.  (*Id.* ¶¶ 61-64; ECF No. 37-4.)[5]  On February 2, 2022, through Newberg, the EGPOA commenced a foreclosure action (the "Foreclosure Action") against Plaintiffs in the Sullivan County Supreme Court (the "State Court").  (ECF No. 37-5.)  The EGPOA did not name as a defendant in the action the bank from which Plaintiffs received their mortgage, (AC ¶ 75), but did name Irina, despite the stop-work order being issued to Alexander and EGPOA records showing that the payments were due from him, (*id.* ¶¶ 67-70; ECF No. 37-5).  On June 9, 2022, after Plaintiffs failed to appear in the Foreclosure Action, the EGPOA

---

[4] A *mikvah* is a "pool of water, in which Jewish people immerse to affect purity."  Rivkah Slonim, *The Mikvah*, Chabad.org, https://www.chabad.org/theJewishWoman/article_cdo/aid/1541/jewish/The-Mikvah.htm (last visited Feb. 25, 2025).  It must contain at least 200 gallons of rainwater and be built into the ground or as an essential part of a building.  *Id.*

[5] Section 339-z, which is part of New York's Condominium Act, provides, in part, that "[t]he board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon."  N.Y.R.P.L. § 339-z.  Plaintiffs allege that Section 339-z applies only to condominiums, not homeowners associations, and that Newberg knew or should have known that Section 339-z was not a proper ground on which to seek a lien on or foreclosure of the Property.  (AC ¶¶ 65-66.)  Defendant Newberg contends that the EGPOA also relied on its 2007 Declaration of Covenants, Easements, Restrictions, Charges and Liens, and that an HOA was permitted to proceed in that fashion in *Bd. of Dirs. of Hunt Club at Coram Homeowners Ass'n, Inc. v. Hebb*, 72 A.D.3d 997 (2d Dep't 2010).  (ECF No. 41 ("Newberg Reply") at 6-7.)  I need not resolve that dispute to dispose of the pending motions.

moved for a default judgment, (ECF No. 37-8), which the State Court granted on September 13, 2022, (ECF No. 37-9).  On January 17, 2023, the State Court issued a Judgment of Foreclosure and Sale, ordering the sale of the Property.  (ECF No. 37-11.)  The EGPOA purchased the Property at the foreclosure sale for $1,000 on February 27, 2023, (ECF No. 37-12; AC ¶¶ 14, 57, 60), and later re-listed it for $525,000, (AC ¶¶ 48, 59-60).  On June 1, 2023, Plaintiffs filed with the Appellate Division, Third Department, Notices of Appeal from the Default Judgment and the Judgment of Foreclosure and Sale, (ECF Nos. 37-14, 37-15), but did not perfect those appeals, apparently deciding to instead return to the State Court to seek vacatur of the default judgment, (ECF No. 46 ("Ps' Opp. to EGPOA") at 17).

Meanwhile, on May 10, 2023, the EGPOA commenced an eviction proceeding (the "Eviction Proceeding") against Plaintiffs in the Justice Court for the Town of Thompson (the "Town Court").  (ECF No. 37-16.)  On June 14, 2023, Plaintiffs moved to dismiss the eviction petition, (ECF No. 37-17), which the Town Court denied on July 10, 2023, (ECF No. 37-18.)  On July 19, 2023, the Town Court granted the EGPOA's eviction petition and issued a Warrant of Eviction.  (ECF No. 37-19.)  On August 1, 2023, Plaintiffs filed a Notice of Appeal with the County Court of Sullivan County, (ECF No. 37-20), which the County Court dismissed on November 6, 2023 because Plaintiffs failed to timely perfect their appeal, (ECF No. 37-21).  Finally, on January 30, 2024, Plaintiffs moved in the State Court for an order vacating the Default Judgment against them, (ECF Nos. 37-22 to 25), which the State Court denied on February 28, 2024, (ECF No. 37-29).

**B.    Procedural History**

On September 18, 2023, Plaintiffs filed their initial Complaint, alleging that Defendants violated the Fair Housing Act ("FHA") and the New York Civil Rights Law § 40-c, and that

Newberg violated the Fair Debt Collection Practices Act ("FDCPA"). (*See generally* ECF No. 3.) Defendants filed pre-motion letters in anticipation of their motions to dismiss. (*See* ECF Nos. 16, 17, 19.) At the pre-motion conference on December 22, 2023, I granted Plaintiffs leave to amend the Complaint and set a briefing schedule for the motions. (*See* Minute Entry dated Dec. 22, 2023.) On January 22, 2024, Plaintiffs filed the AC, bringing FHA discrimination and retaliation claims against Defendants and an FDCPA claim against Newberg. (ECF No. 23.) The instant motions followed.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009). "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

> ### B.    Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

7

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[6]

## III.  DISCUSSION

Defendants argue that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and *res judicata*, and that in any event Plaintiffs fail to state claims under the FHA and the FDCPA. (*See generally* Newberg Mem.; ECF No. 44 ("EGPOA Mem.").)

### A.  *Rooker-Feldman*

Defendants contend that the Court lacks subject matter jurisdiction because Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, pursuant to which

> federal district courts may not exercise subject matter jurisdiction over actions that seek appellate review of state court judgments.  The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments unless otherwise provided by Congress.  This comity principle seeks to prevent state and federal courts [from] fighting each other for control of a particular case.

> The Second Circuit has established four requirements for applying the *Rooker-Feldman* doctrine:  (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject that judgment; and (4) the state court must have rendered judgment before federal district court proceedings commenced.

---

[6] Defendant Newberg cites to the outdated standard under which a motion to dismiss can be granted only "if it 'appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957))."  (ECF No. 38 ("Newberg Mem.") at 8.)  *Conley*'s "no set of facts" standard was "retire[d]" by *Twombly* in 2007, 550 U.S. at 563, and the applicable standard – one less plaintiff-friendly – is now one of plausibility, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  Nobody – let alone a defendant – should be citing to or relying on it eighteen years after it has been rendered obsolete.

*Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); *see Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023).

As to the first and fourth (procedural) elements of *Rooker-Feldman*, Plaintiffs lost in the Foreclosure Action when the State Court issued a Judgment of Foreclosure and Sale. (ECF No. 37-11); *see Lorick v. Kilpatrick Townsend & Stockton LLP*, No. 18-CV-7178, 2021 WL 7906510, at *5 & n.15 (E.D.N.Y. Aug. 20, 2021), *report and recommendation adopted*, 2022 WL 1104849 (E.D.N.Y. Apr. 13, 2022); *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 274-75 (S.D.N.Y. 2018). But "[i]f a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." *Hunter*, 75 F.4th at 70; *see White v. Schmidt*, No. 22-1267, 2024 WL 1266245, at *3 (2d Cir. Mar. 26, 2024). Plaintiffs argue that the state court proceedings had not concluded before they filed this action because their notices of appeal from the Default Judgment and the Judgment of Foreclosure and Sale, (ECF Nos. 37-14, 37-15), were pending at the time, (*see* ECF No. 40 ("Ps' Opp. to Newberg") at 16-17; Ps' Opp. to EGPOA at 16-17). Defendants contend that the Notices of Appeal do not prevent application of *Rooker-Feldman* because Plaintiffs did not perfect those appeals and elected to abandon them in favor of an application in the State Court to vacate the Default Judgment. (*See* Newberg Reply at 3; ECF No. 48 ("EGPOA Reply") at 8 n.8.) I agree with Plaintiffs.

Under the Practice Rules of the Appellate Division, appellants must perfect their appeal within six months from the date on the notice of appeal. 22 N.Y.C.R.R. § 1250.9(a). When Plaintiffs filed their original complaint in this action on September 18, 2023, their six months had not yet elapsed. Accordingly, Plaintiffs' appeals were pending when they filed the instant action, and *Rooker-Feldman* does not apply. The Court is sympathetic to Defendants' argument

that Plaintiffs should not get the benefit of this rule where they admit that they abandoned their appeals because they "had not developed any meaningful Appellate Record as [the appeals were] based upon a default." (Ps' Opp. to Newberg at 17; Ps' Opp. to EGPOA at 17; *see* Newberg Reply at 3; EGPOA Reply at 8 n.8.) But at the time Plaintiffs initiated this action, they had not yet failed to perfect their appeal. And a review of the State Court dockets reveals that Plaintiffs filed documents in their appeals on November 28, 2023, two months after they commenced this action. *See Emerald Green Property Owners Association, Inc. v. Alexander Gurevitch et al.*, 23-CV-1036, (3d Dep't 2023); *Emerald Green Property Owners Association, Inc. v. Alexander Gurevitch et al.*, 23-CV-1037, (3d Dep't 2023). Accordingly, the fourth *Rooker-Feldman* factor is not met.[7]

In any event, I find that the second and third (substantive) elements are also not met. If the AC

> merely complains of injuries caused by the state-court foreclosure judgment and seeks this Court's review and rejection of that judgment, then . . . this Court lacks subject matter jurisdiction over [it]. The Second Circuit has explained that the requirement that a plaintiff's injuries be caused by the state judgment is the core requirement of the *Rooker-Feldman* doctrine. Accordingly, *Rooker-Feldman* would not prevent Plaintiffs from raising federal claims based on the same facts as a prior state case so long as the plaintiff complains of an injury *independent* of an adverse decision. Such an independent claim is not barred by *Rooker-Feldman*, even if the claim denies a legal conclusion that a state court has reached in a case to which the plaintiff was a party.

---

[7] That no appeal can be taken from the entry of default judgment under New York law, *see Adotey v. Brit. Airways, PLC*, 44 N.Y.S.3d 82, 84 (App. Div. 2d Dep't 2016) ("[N]o appeal lies from an order or judgment granted upon the default of the appealing party."), is relevant to whether the appeal will succeed, *cf. Butler v. Miller*, 193 N.Y.S.3d 406, 407 (App. Div. 3d Dep't 2023) (dismissing appeal taken from entry of default), not to whether the appeal is pending. In any event, Plaintiffs appealed not only from the Default Judgment, but also from the Judgment of Foreclosure and Sale. *See JPMorgan Chase Bank, Nat'l Ass'n v. Horsfield*, 211 N.Y.S.3d 429, 431 (App. Div. 2d Dep't 2024) (dismissing appeal from entry of default but considering appeal of judgment of foreclosure and sale); *Bank of N.Y. Mellon Tr. Co., N.A. v. Barone*, 177 N.Y.S.3d 294, 296 (App. Div. 2d Dep't 2022) (same).

*Davis v. JP Morgan Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *6 (S.D.N.Y. Mar. 30, 2016).

Plaintiffs' claims are independent under this standard. Unlike the cases that have found that claims challenging a foreclosure judgment are barred by *Rooker-Feldman*, Plaintiffs here do not invite this Court to review or undo the Judgment of Foreclosure and Sale. *See, e.g.*, *Leonardo v. Wells Fargo Bank, N.A.*, No. 21-CV-4949, 2024 WL 4485608, at *14 (E.D.N.Y. Aug. 1, 2024) (substantive requirements met where plaintiffs sought an order "declaring the foreclosure and subsequent eviction prosecuted by Defendants, void and of no force and effect"), *report and recommendation adopted*, 2024 WL 4344849 (E.D.N.Y. Sept. 30, 2024); *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-CV-826, 2023 WL 8283148, at *4 (E.D.N.Y. Nov. 30, 2023) (substantive requirements met where plaintiff requested that the court "nullify" the loan on which the foreclosure was based due to fraud and invalidity), *aff'd sub nom. Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057-CV, 2024 WL 4691006 (2d Cir. Nov. 6, 2024); *Blagrove v. Deutsche Bank Nat'l Tr. Co.*, No. 19-CV-5357, 2021 WL 1601115, at *3 (E.D.N.Y. Apr. 23, 2021) (substantive requirements met where plaintiff "identified various grounds for recission of the entire mortgage and note" and sought an order "declaring the foreclosure sale of the subject premises to be null and void"); *Talley v. LoanCare Servicing, Div. of FNF*, No. 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (substantive requirements met where plaintiff alleged that defendant engaged in fraudulent and deceptive practices at origination of mortgage and sought to "stop illegal and fraudulent foreclosure").

Plaintiffs' FHA and FDCPA claims seek monetary damages for injuries that are independent of the foreclosure judgment itself and an injunction to prevent future violations.

(*See* AC at 21-22.)  Plaintiffs allege that Defendants discriminated against them by assessing fees for violations of the EGPOA's rules – by which Plaintiffs allege they were not bound – for structures necessary to practice their religion, and that Newberg improperly sued Irina in an attempt to collect those fees.  (*See id.* ¶¶ 77-81, 99-104.)  The claims against the EGPOA "do not require the Court to review and reject the state foreclosure judgment because they allege injuries caused by [Defendants'] pre-judgment actions and do not assign error to the state court," *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *7 (S.D.N.Y. Mar. 9, 2020) (*Rooker-Feldman* did not bar claims for IIED, breach of the implied covenant of good faith and fair dealing, conversion, and violations of RESPA, TILA and GBL § 349), and the alleged litigation misconduct underlying the FDCPA claim against Newberg "was not caused by the state court's . . . entry of a default judgment against plaintiff," *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868, 2014 WL 4843947, at *7 (E.D.N.Y. Sept. 26, 2014) (litigation misconduct at most was ratified or left unpunished by state court ruling; *Rooker-Feldman* does not apply where federal plaintiff "asserts independent injuries under the FDCPA, seeks monetary damages available to him under that statute, and does not ask the court to vacate the state court's default judgment"); *see Kupfer v. Residential Mortg. Sol. LLC*, No. 19-CV-2738, 2020 WL 13572821, at *8 (E.D.N.Y. Dec. 1, 2020) (*Rooker-Feldman* did not bar damages claim for defendant's fraud in obtaining a judgment of foreclosure and sale); *Davis*, 2016 WL 1267800, at *8 (*Rooker-Feldman* did not bar claim for fraud based on defendants' attempts to collect on note "despite knowing that they did not possess true, legal title to the collection on the subject Note"); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *4 (E.D.N.Y. Mar. 11, 2016) (*Rooker-Feldman* did not bar claims for damages and injunction based on defendants' alleged conduct in procurement of the underlying mortgage and

during state court proceedings). Because Plaintiffs' claims "are not premised on any injuries caused by the [state court judgments themselves], they are not barred by *Rooker-Feldman*." *Almazon*, 2020 WL 1151313, at *7; *see Ho-Shing v. Budd*, No. 17-CV-4633, 2018 WL 2269245, at *4 (S.D.N.Y. May 17, 2018) ("[T]o the extent that the Complaint seeks monetary damages based on statutory violations, there is jurisdiction over those claims, because they do not require that the Court review and reject the state court judgment."), *aff'd*, 771 F. App'x 79 (2d Cir. 2019).

### B.  <u>Failure to State a Claim</u>

#### 1.  *Res Judicata*

Defendants argue that, even if Plaintiffs' claims are not precluded by *Rooker-Feldman*, they must still be dismissed as barred by *res judicata*. (*See* Newberg Mem. at 14-16; EGPOA Mem. at 9-12.) I agree in part.

"A federal court must give a state court judgment the same preclusive effect that it would have in that state's courts." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146 (E.D.N.Y. 2016). Because the Foreclosure Action took place in New York, this Court applies New York's law governing *res judicata*. *See id.*; *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290 (E.D.N.Y. 2024).

"Under New York law, *res judicata* (or claim preclusion) provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burton*, 738 F. Supp. 3d at 290. To succeed on the affirmative defense of *res judicata*, a party "must show (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been

raised, in the prior action." *Ho-Shing*, 2018 WL 2269245, at *4; *see Team Kennedy v. Berger*, No. 24-CV-3897, 2024 WL 4144057, at *7 (S.D.N.Y. Sept. 10, 2024), *appeal withdrawn sub nom. Kennedy v. Berger*, No. 24-2385, 2024 WL 5088310 (2d Cir. Oct. 8, 2024); *Simmons v. Trans Express Inc.*, 355 F. Supp. 3d 165, 171 (E.D.N.Y. 2019), *aff'd*, 16 F.4th 357 (2d Cir. 2021). "New York courts use a transactional analysis approach to determine whether a claim could have been raised in the prior litigation," meaning that "any subsequent claim that arises out of the same transaction or series of transactions as the adjudicated claim is barred, even if based upon different theories or if seeking a different remedy." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 114 (2d Cir. 2024). "In applying the transactional approach, New York courts analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 669 F. Supp. 3d 186, 190 (W.D.N.Y. 2023), *aff'd*, No. 23-765, 2024 WL 2104604 (2d Cir. May 10, 2024) (summary order), *cert. denied*, 145 S. Ct. 377 (Mem.) (Oct. 15, 2024).

As to the first factor, the Foreclosure Action, which resulted in the Judgment of Foreclosure and Sale, was a prior adjudication on the merits. *See Burton*, 738 F. Supp. 3d at 290 (foreclosure action resulting in judgment of foreclosure is adjudication on the merits). This is so even where the Judgment of Foreclosure and Sale resulted from a default. *See Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (summary order) ("The foreclosure default judgment is a final judgment on the merits."); *Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575 (2d Cir. 2018) (summary order) (same); *Jones v. Grisanti*, No. 22-CV-145, 2024 WL 3415361, at *8 (W.D.N.Y. July 15, 2024) ("[U]nder New York law, it is established that a decision granting a

14

judgment of foreclosure and sale on default constitutes a decision on the merits."); *Almazon*, 2020 WL 1151313, at *10 n.18 ("A default judgment has the same *res judicata* effect as a fully litigated judgment.") (collecting cases).[8]

As to the second factor, both Plaintiffs and the EGPOA were parties in the Foreclosure Action. Newberg argues that he was in privity with the EGPOA because he represented its interests in the state court actions. (*See* Newberg Mem. at 15.) But an attorney is in privity with his client for purposes of *res judicata* only where the attorney "had a personal interest in the subject of the earlier action." *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022). "This is the case even where the plaintiff's later claim is predicated on allegations that the counsel to the party in the prior action and that party itself were involved in misconduct." *Weir v. Montefiore Med. Ctr.*, No. 23-CV-4468, 2023 WL 5747642, at *4 (S.D.N.Y. Sept. 6, 2023), *reconsideration denied*, 2024 WL 2049411 (S.D.N.Y. May 6, 2024), *aff'd*, No. 24-1527, 2025 WL 289497 (2d Cir. Jan. 24, 2025) (summary order). Newberg does not argue that he had a "cognizable personal interest in the subject of the state foreclosure action," *Hansen*, 52 F.4th at 101, "nor do[es he] point to any particular circumstances indicating that a finding of privity would be appropriate here," *Jones*, 2024 WL 3415361, at *10. Instead, he merely states that he was in privity with the EGPOA by virtue of their attorney-client relationship. (*See* Newberg Mem. at 15.) But "an attorney-client relationship, without more, is insufficient to establish privity between counsel to a

---

[8] The cases to which Plaintiffs cite in support of their argument that *res judicata* does not apply to default judgments, (*see* Ps' Opp. to Newberg at 20; Ps' Opp. to EGPOA at 20), hold that default judgments have no *res judicata* effect on intervenors in a later case or others who were not parties to the earlier case, *see Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20-CV-3479, 2020 WL 6586156, at *4 (S.D.N.Y. Nov. 10, 2020); *Acadia Realty Ltd. P'ship v. Ringel*, 11 N.Y.S.3d 59 (App. Div. 1st Dep't 2015); *Amalgamated Bank v. Helmsley-Spear, Inc.*, 970 N.Y.S.2d 522 (App. Div. 1st Dep't 2013), *aff'd*, 25 N.Y.3d 1098 (2015). These cases have no applicability where, as here, Defendants seek to bind Plaintiffs, who were parties in the state court proceedings, to the resulting judgments.

party in the prior action and that party itself." *Weir*, 2023 WL 5747642, at *4. Accordingly, the Court cannot apply *res judicata* to the claims against Newberg.

As to the third factor, Plaintiffs do not dispute that their FHA claims against the EGPOA arise out of the same transaction or series of transactions as the claims raised by the EGPOA in the Foreclosure Action, and I am satisfied that this requirement is met. Plaintiffs seek to challenge in this action the same fines and assessments that formed the basis of the Foreclosure Action. Plaintiffs certainly could have raised the instant claims in the Foreclosure Action. *See Kupfer*, 2020 WL 13572821, at *10; *Almazon*, 2020 WL 1151313, at *12; *Hourani*, 158 F. Supp. 3d at 147-48.

Instead, Plaintiffs argue that *res judicata* does not apply to any of their claims because New York does not have a compulsory counterclaim rule and thus they had no obligation to raise their claims as defenses or counterclaims in the state court actions. (*See* Ps' Opp. to Newberg at 20; Ps' Opp. to EGPOA at 20-21.) They are correct that New York has a permissive counterclaim rule, meaning that "a party is not required to assert all counterclaims in the original action, and instead may assert those claims later in a separate action, in the appropriate forum of the plaintiff's choosing." *Dolan v. Select Portfolio Servicing, Inc.*, No. 13-CV-1552, 2014 WL 4662247, at *3 (E.D.N.Y. Sept. 18, 2014). Accordingly, "*res judicata* generally will not necessarily bar claims that could have been counterclaims in a prior action." *Hourani*, 158 F. Supp. 3d at 147. But there is a limited exception to New York's permissive counterclaim rule where a subsequent lawsuit "amounts to an attack on a judgment previously issued by the state court." *Dolan*, 2014 WL 4662247, at *4. "Under this exception, a plaintiff will be barred from asserting a claim in a subsequent action where the plaintiff remained silent in the prior action, only to attack that judgment in a subsequent action on that same basis." *Id.*; *see Hourani*, 158 F.

16

Supp. 3d at 147 ("As the New York Court of Appeals explains, while [the permissive counterclaim] rule may save from the bar of *res judicata* those claims for separate or different relief that could have been but were not interposed in the parties' prior action, it does not permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action.").

Applying New York's permissive counterclaim rule, some courts have permitted plaintiffs to litigate claims that could have been, but were not, brought in prior foreclosure proceedings. *See Almazon*, 2020 WL 1151313, at *10 (collecting cases). But other courts have barred plaintiffs from litigating claims that could have been raised in a prior foreclosure proceeding, particularly where they seek a judgment that would be inconsistent with the judgment in the foreclosure action. *See, e.g.*, *Lorick*, 2021 WL 7906510, at *10-11; *Ho-Shing*, 2018 WL 2269245, at *4-5; *Close-Up Int'l, Inc. v. Berov*, No. 10-CV-404, 2011 WL 13294644, at *5 & n.1 (E.D.N.Y. Mar. 18, 2011). The latter situation typically arises where a plaintiff challenges the underlying basis for the foreclosure, such as by asserting that the defendant obtained the mortgage through fraud. *See Harris*, 737 F. App'x at 575-76 (applying *res judicata* where plaintiff sought declaratory relief that defendants "did not have a valid mortgage note and fraudulently obtained mortgage documents, and therefore were not entitled to recover any property or money from her related to the mortgage," which the court found would be "inconsistent with the judgment in the foreclosure action"); *Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the *underlying mortgage* through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of

17

such a claim.") (emphasis in original), *report and recommendation adopted*, 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).

Although New York's permissive counterclaim rule necessarily requires a more lenient application of *res judicata* to claims that could have been raised as counterclaims in a prior action, the rule does not, as noted, "permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action." *Hourani*, 158 F. Supp. 3d at 147. In short, "[t]he exception to New York's permissive counterclaim rule bars a subsequent lawsuit that amounts to an attack on a judgment previously issued by the state court." *Dolan*, 2014 WL 4662247, at *4. While Plaintiffs do not seek in this action to undo the State Court judgment, they do seek to challenge the validity of its underlying basis, which amounts to an attack on that judgment. Thus, even under New York's permissive counterclaim rule, to the extent Plaintiffs assert claims based on the alleged inapplicability of the EGPOA's rules and regulations to the Property, (*see, e.g.*, AC ¶¶ 36, 41), those claims are barred by *res judicata* as to the EGPOA because those rules and regulations formed the basis for the fees on which the EGPOA based the Foreclosure Action. But to the extent Plaintiffs assert claims under the FHA based on other allegedly discriminatory acts, those claims are not barred by *res judicata*.

### 2.    Fair Housing Act

The FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(a), and likewise prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities

18

in connection therewith, because of race, color, religion, sex, familial status, or national origin,"
42 U.S.C. § 3604(b).  The FHA also makes it unlawful to "coerce, intimidate, threaten, or
interfere with any person in the exercise or enjoyment of, or on account of his having exercised
or enjoyed, or on account of his having aided or encouraged any other person in the exercise or
enjoyment of, any right granted or protected by section [3604]."  42 U.S.C. § 3617.  Plaintiffs
assert claims for both discrimination and retaliation under the FHA.[9]

a.  Discrimination

> When, as here, a plaintiff brings a claim under the FHA that does not rest on direct
> evidence of . . . discrimination, . . . he must plausibly allege that he [1] is a member of a
> protected class, [2] suffered an adverse action, and [3] has at least minimal support for
> the proposition that the housing provider was motivated by discriminatory intent.

---

[9] Defendants assume in their oppositions, and Plaintiffs do not dispute, that Plaintiffs'
first cause of action is a disparate treatment discrimination claim.  (*See* EGPOA Mem. at 13; Ps'
Opp. to EGPOA at 12; Ps' Opp. to Newberg at 9; *see also* AC ¶ 80 ("Defendants . . . have
intentionally discriminated against the Plaintiffs.").)  "[I]t remains an open question within the
Second Circuit whether § 3604 reaches post-acquisition conduct."  *David v. Whittaker*, No. 24-
CV-699, 2024 WL 4512407, at *5 n.4 (S.D.N.Y. Oct. 17, 2024); *see Dickerson v. BPP PCV
Owners LLC*, No. 21-CV-9003, 2022 WL 4538281, at *3 n.5 (S.D.N.Y. Sept. 28, 2022) ("The
law in this circuit concerning to what extent the FHA's prohibition of discrimination reaches
conduct engaged in after a tenant acquires the dwelling – commonly referred to as post-
acquisition conduct – is not completely settled.").  Notably, there is no indication in either the
AC or Plaintiffs' opposition briefs that Plaintiffs intended to assert a hostile housing environment
claim, which courts in this Circuit have recognized as an actionable claim for post-acquisition
conduct.  *See Byng v. Kelly*, No. 22-CV-1406, 2023 WL 2206547, at *7 (N.D.N.Y. Feb. 24,
2023), *report and recommendation adopted*, 2023 WL 2573271 (N.D.N.Y. Mar. 20, 2023);
*Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019).  Because Plaintiffs
treat their first cause of action as a disparate treatment discrimination claim, I will assume for
purposes of this motion that Plaintiffs can state a claim for disparate treatment based on post-
acquisition conduct.  *See Dickerson*, 2022 WL 4538281, at *3 n.5; *see also Leon v. Kearney*, No.
23-CV-5182, 2024 WL 3729004, at *2-3 (S.D.N.Y. Aug. 7, 2024) (applying the disparate
treatment test to post-acquisition conduct); *Smith v. Davis*, No. 22-CV-1202, 2023 WL 5019432,
at *7 (N.D.N.Y. Mar. 28, 2023) (same), *report and recommendation adopted*, 2023 WL 4346961
(N.D.N.Y. July 5, 2023).  In any event, the outcome would be the same even if Plaintiffs had
framed their claim as one for a hostile housing environment.

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021); *see Katz v. N.Y.C. Hous. Pres. & Dev.*, No. 21-CV-2933, 2024 WL 664711, at *6 (S.D.N.Y. Feb. 16, 2024); *Dickerson*, 2022 WL 4538281, at *4.

Defendants do not dispute that Plaintiffs are members of a protected class or that they suffered an adverse action.  Instead, Defendants argue that the AC lacks factual allegations to support an inference that they were motivated by discriminatory intent.  (*See* EGPOA Mem. at 14-16; Newberg Mem. at 18-19.)  I agree.  Plaintiffs allege in the AC that Defendants assessed charges against them for structures they built on the Property that are necessary to practice their religion and that the EGPOA held meetings during Shabbat to ensure that they could not redress grievances therefrom.  (*See* AC ¶¶ 37-39, 42, 54-58.)  But there are no allegations in the AC from which I can conclude that Defendants were motivated to so act by discriminatory intent. Plaintiffs do not allege, for instance, that Defendants did not charge non-Jewish residents for similar structures on or alterations to their properties.  *See Katz*, 2024 WL 664711, at *6 ("[B]ecause the Amended Complaint does not provide enough information to compare the events of which Plaintiffs complain to Defendants' responses to other housing applications, there is no factual basis to plausibly infer that Defendants' conduct with regard to Plaintiffs was motivated by familial-status-based animus); *Moody v. Related Cos., L.P.*, 620 F. Supp. 3d 51, 56 (S.D.N.Y. 2022) ("[I]f Plaintiffs had alleged, in a non-conclusory manner, that tenants of affordable housing units who are white are given access to amenities denied to Black and Hispanic affordable housing tenants, they would adequately allege disparate treatment.  Instead, because Plaintiffs have not adequately pleaded a comparator who is similarly situated but treated better,

they have not adequately pled a disparate treatment claim.").[10]  Nor have they provided facts

suggesting that meetings were purposely scheduled for when Plaintiffs could not attend – for

example, that they were ordinarily not held on Shabbat but were moved to prevent Plaintiffs'

attendance.  Indeed, Plaintiffs provide no facts at all about when any such meetings were held,

how they were scheduled, or what makes Plaintiffs think that the scheduling had anything to do

with their faith.[11]  They do not even allege that such meetings were open to residents or that

attendance at such meetings was required to bring a grievance to the EGPOA's attention.  *See*

*Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers*

*& Miscellaneous Workers, Greater N.Y. & Vicinity, Loc. Union No. 812*, No. 17-CV-4730, 2019

WL 1228056, at *28 (S.D.N.Y. Mar. 15, 2019) (where plaintiff offered no details regarding

---

[10] As discussed above, as to the claim against the EGPOA, *res judicata* bars consideration of the applicability of the EGPOA's rules to Plaintiffs in the first place, but even if it did not, I would reach the same conclusion as I do with respect to the charges – that there are no facts rendering discriminatory intent plausible – because the AC contains no allegations that the EGPOA failed to apply its rules to similarly situated property owners outside Plaintiffs' protected class.  *See Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062, 2018 WL 8369422, at *5 (E.D.N.Y. Aug. 10, 2018) ("Plaintiff fails . . . to even allege that Wells Fargo treated differently similarly situated applicants who were not in the protected class."), *report and recommendation adopted*, 2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019), *aff'd*, 811 F. App'x 27 (2d Cir. 2020) (summary order).  Although, as discussed above, Plaintiffs are not barred from bringing a claim against Newberg based on the applicability of the EGPOA's rules to the Property, the same logic applies and any such claim fails.

[11] Defendant EGPOA submitted redacted minutes from EGPOA board meetings in connection with the instant motion.  (ECF No. 43-2; *see* ECF No. 43-3.)  EGPOA argues that the minutes show that, in a three-year period, only one of twenty-eight meetings was held on Shabbat.  (*See* EGPOA Mem. at 15.)  But while courts can take judicial notice of meeting minutes of public bodies as matters of public record, *see Knights of Columbus Council 2616 v. Town of Fairfield*, No. 22-CV-1579, 2024 WL 3900102, at *5 n.2 (D. Conn. Aug. 22, 2024); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 696 n.3 (S.D.N.Y. 2011), the Court does not believe it can take judicial notice of minutes of a private body like the EGPOA, especially because there is no indication that the minutes are publicly available, and thus confines its consideration to the allegations in the AC.

meetings from which he was allegedly excluded, "naked allegation that he was prevented from attending . . . is not enough to state a plausible claim.").

The allegations to which Plaintiffs point in their oppositions are insufficient to state a claim for discrimination. Plaintiffs allege that unnamed "individuals associated with the EGPOA" at an unidentified time vocalized their desire to "keep Jews from New York City out of our Association." (AC ¶ 24.) Although the Court condemns this rhetoric, "stray remarks are insufficient to plausibly allege an intent by defendants to discriminate against plaintiff." *Paladino v. Beaumont*, No. 20-CV-65, 2023 WL 9469277, at *5 (W.D.N.Y. Sept. 1, 2023), *report and recommendation adopted*, 2024 WL 343308 (W.D.N.Y. Jan. 29, 2024); *see Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 553 (D. Vt. 2019) ("When considering isolated stray remarks to determine whether they are probative of discriminatory intent, the more remote and oblique the remarks are in relation to the decision-maker's adverse action, the less they prove that the action was motivated by discrimination."); *Favourite*, 381 F. Supp. 3d at 281 (defendant's remark that the super was "big, black and scary" insufficient to support an inference of discrimination). This is so even when the "stray remarks" come from decision-makers. *Cf. Sethi v. Narod*, 12 F. Supp. 3d 505, 544 (E.D.N.Y. 2014) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination."). Here there is no indication that the maker(s) of the discriminatory remark had anything to do with the EGPOA actions Plaintiffs challenge.[12] *See Favourite*, 381 F. Supp. 3d at

---

[12] Plaintiffs concede that they have no basis for attributing to the EGPOA the animus of the unnamed individual(s) who made the statement, stating that "the specific names of those others who control the Defendant Association can only be obtained by Discovery." (Ps' Opp. to EGPOA at 16 n.56). But as *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around. *See Iqbal*, 556 U.S. at 678-79.

281 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight.").

And Plaintiffs' allegations that the EGPOA, in response to the growing Hasidic Jewish population in Sullivan County, undertook efforts to prevent Jews from moving into their area and to remove Jews who purchased properties there, (*see* AC ¶¶ 15-20), are unsupported by any factual basis. Such conclusory allegations are insufficient to state a claim for discrimination under the FHA, *see Dickerson v. BPP PCV Owners LLC*, No. 21-CV-9003, 2024 WL 1348497, at *4 (S.D.N.Y. Mar. 28, 2024) (conclusory assertions that defendant was motivated by discriminatory intent, in combination with allegations of "historic and widespread discrimination against African Americans in the [town housing complex]," insufficient to state FHA claim); *Glover v. HPC-Eight, LLC*, No. 20-CV-1535, 2022 WL 1004572, at *9 (D. Conn. Apr. 4, 2022) ("Plaintiff's conclusory allegation that she was discriminated against due to Race, is insufficient to state a claim."); *Moody*, 620 F. Supp. 3d at 56 ("Notwithstanding the numerous times that Plaintiffs use the word 'intentionally' throughout their Amended Complaint, they allege no facts that would permit the Court to infer that a discriminatory intent motivated any of Defendants' actions.").

Accordingly, Plaintiffs' discrimination claim must be dismissed.

b.    <u>Retaliation</u>

"To state a claim of retaliation under [§ 3617 of ] the FHA, plaintiff[s] must plausibly allege that: (1) [they] engaged in protected activity by opposing conduct prohibited under the FHA; (2) defendants were aware of that activity; (3) defendants subsequently took adverse action against [them]; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action." *Paladino*, 2023 WL

9469277, at *4. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Favourite*, 381 F. Supp. 3d at 278.

Plaintiffs allege briefly that they "advocated for the rights of all of the [EGPOA residents]" by "passing out flyers to other[] such residents in the Defendant EGPOA and otherwise encouraging . . . such residents to exercise and enjoy such Federal rights." (AC ¶¶ 87-88.) As an initial matter, the AC offers no description of the content of the flyers, so the Court cannot discern whether the flyers constituted an "action taken to protest or oppose statutorily prohibited discrimination." *Favourite*, 381 F. Supp. 3d at 278. Even assuming they did, the AC is "devoid of allegations establishing any kind of causal relationship between [Plaintiffs' protected activity] and the conduct at issue in this action." *Dickerson*, 2022 WL 4538281, at *6. Plaintiffs do not specify when they disseminated the flyers, making it impossible for the Court to infer based on temporal proximity a causal connection between the speech and any adverse action by Defendants. *See id.*; *cf. Smith v. Davis*, No. 22-CV-1202, 2024 WL 2126729, at *4 (N.D.N.Y. May 13, 2024) (plaintiffs sufficiently alleged causal connection where they alleged that (1) they filed a complaint with HUD's Office of Fair Housing and Equal Opportunity regarding race and disability discrimination, (2) defendants were aware of the complaint, and (3) plaintiffs received a notice directing them to vacate their apartment "shortly after filing the . . . complaint"). And there are no other facts suggesting that there was any relationship between whatever Plaintiffs said and what Defendants are alleged to have done.

Accordingly, Plaintiffs' retaliation claim must be dismissed.

### 3.    Fair Debt Collection Practices Act

Newberg argues that Plaintiffs' FDCPA claim is time-barred, and that in any event Plaintiffs fail to state a claim. (Newberg Mem. at 19-25.) Because I agree that the FDCPA

claim is barred by the statute of limitations, I need not address Newberg's other arguments for dismissal. *See Friedman v. Bartell*, No. 22-CV-7630, 2024 WL 1076736, at *5 n.6 (S.D.N.Y. Mar. 12, 2024); *Ortega v. Arnold*, No. 13-CV-9155, 2016 WL 1117585, at *3 n.3 (S.D.N.Y. Mar. 21, 2016); *Barnett v. Etheridge*, No. 07-CV-1611, 2008 WL 795300, at *3 n.3 (E.D.N.Y. Mar. 24, 2008).

"[A]n FDCPA claim must be brought 'within one year from the date on which the violation occurs.'" *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019) (quoting 15 U.S.C. § 1692k(d)). "An FDCPA violation occurs when an individual is injured by the alleged unlawful conduct." *Makhnevich v. Bougopoulos*, 650 F. Supp. 3d 8, 16 (E.D.N.Y. 2023), *aff'd sub nom. Makhnevich v. Novick Edelstein Pomerantz PC*, No. 23-202-CV, 2024 WL 2207061 (2d Cir. May 16, 2024). An FDCPA claim based on a foreclosure action accrues when the action is filed. *See St. Maarten v. J.P. Morgan Chase Bank, N.A.*, No. 20-CV-762, 2021 WL 2217503, at *9 (E.D.N.Y. Jan. 14, 2021); *Oliver v. U.S. Bancorp*, No. 14-CV-8948, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015); *DeJesus v. BAC Home Loans Servicing, LP*, No. 13-CV-2864, 2014 WL 4804999, at *5 (E.D.N.Y. Sept. 26, 2014).

Plaintiffs commenced this action on September 18, 2023, (ECF No. 3), so any alleged violations that occurred before September 18, 2022 are barred by the statute of limitations. The allegations in the AC concerning Newberg – namely, that Newberg attempted to collect unauthorized fees from Plaintiffs by filing a Notice of Lien and initiating the Foreclosure Action based on false statements, (AC ¶¶ 59, 61, 63-66, 69-72) – all occurred outside of the limitations period. The last of these acts – the initiation of the Foreclosure Action – took place on February 2, 2022, (ECF No. 37-5), more than seven months before September 18, 2022.

To avoid application of the statute of limitations, Plaintiffs argue that Newberg committed new FDCPA violations on July 12, 2023 and September 5, 2023 when he was "placed on notice of the illegal basis of pursuing collection against Co-Plaintiff Irina[,] . . . but still pursued that collection process."  (Ps' Opp. to Newberg at 7; *see id.* at 8.)  But the statute of limitations does not restart every time a defendant repeats allegedly false or misleading statements in a foreclosure action.  *See Oliver*, 2015 WL 4111908, at *2 ("That some of the alleged misrepresentations in the Foreclosure Action Complaint were repeated in subsequent state court filings does not amount to a new violation of the FDCPA and does not restart the statute of limitations."); *DeJesus*, 2014 WL 4804999, at *4-5 (rejecting plaintiff's argument that defendants "committed a new violation of the FDCPA each and every time they filed a document or made a statement in the foreclosure action concerning [the] authority to proceed with the action").  Because Plaintiffs do not allege any FDCPA violations that occurred within the limitations period, Plaintiffs' FDCPA claim is barred by the statute of limitations and must be dismissed.[13]

## IV.  **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

---

[13] No new FDCPA claim accrues from the post-foreclosure eviction action because – unlike an eviction action for nonpayment of rent, *see Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) – a post-foreclosure eviction is an attempt to obtain possession of a property, not to collect a debt, *see Jones v. Dolan Connly, P.C.*, No. 19-CV-11076, 2019 WL 6841823, at *4 (D. Mass. Dec. 16, 2019), *aff'd*, No. 20-1014, 2021 WL 10286711 (1st Cir. Nov. 15, 2021); *Garcia v. Solloa*, No. 16-CV-62740, 2017 WL 7792716, at *4 (S.D. Fla. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 7796170 (S.D. Fla. Apr. 20, 2017); *Todaro v. Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.*, No. 16-CV-1480, 2016 WL 6777805, at *7 (N.D. Ohio Nov. 16, 2016), *aff'd*, 704 F. App'x 440 (6th Cir. 2017).

26

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended their complaint, after having the benefit of Defendants' pre-motion letters, (ECF Nos. 16, 17, 19), and the discussion at the December 22, 2023 pre-motion conference, (*see* Minute Entry dated Dec. 22, 2023). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc*., No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be

27

given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 36, 42), and close the case.

**SO ORDERED.**

Dated: February 27, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.